## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| ANTHONY MONDREZ THOMPSON,<br>Plaintiff, | ) ) ) ) | |
| v. | ) ) | C.A. No. 1:20-cv-185-JJM-PAS |
| GARRETT S. HASSETT and<br>JEFFREY KONIECZNY,<br>Defendants. | ) ) ) ) ) | |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge

Before the Court is Defendants Garrett S. Hassett and Jeffrey Konieczny's

Motion for Summary Judgment. ECF No. 70.[1]

## I.   BACKGROUND

On June 22, 2017, Defendants, State Troopers Garrett S. Hassett and Jeffrey

Konieczny, stopped Plaintiff Anthony Mondrez Thompson as he travelled northbound

in his vehicle on highway I-95 in Rhode Island. ECF No. 70-1 at 2 (citations omitted).

At the onset of the traffic stop, Trooper Hassett briefly questioned Mr. Thompson

about his criminal history, during which he denied having been arrested or having

any prior criminal convictions. *Id.* (citation omitted). But when Trooper Hassett

conducted a criminal background search in his police vehicle, he discovered that Mr.

Thompson did have a rather extensive criminal history. *Id.* at 3 (citation omitted).

---

[1] Except where otherwise specified, all citations to ECF numbers refer to the current case. *Thompson v. Hassett*, 1:20-cv-185-JJM-PAS.

This discovery prompted Defendants to ask Mr. Thompson if he had any firearms or contraband in his vehicle, to which he responded in the negative. *Id.* at 2 (citation omitted). Impelled by a heightened level of suspicion because Mr. Thompson lied about his criminal background, Defendants asked Mr. Thompson to exit his vehicle. *Id.* at 3 (citation omitted). Mr. Thompson complied. *Id.* (citation omitted).

Once Mr. Thompson was out of his vehicle, he consented to a search of the vehicle's glovebox. *Id.* (citation omitted). During a cursory search of the front portion of the vehicle, Trooper Hassett noticed a flashlight conspicuously like one that could attach to a firearm. *Id.* (citation omitted). Spurred by this discovery, Defendants detained Mr. Thompson "for officer safety," so that they could conduct a more thorough search of the vehicle. *Id.* at 4 (citation omitted). This search animated Mr. Thompson to flee down highway I-95 into oncoming traffic. *Id.* (citation omitted). Defendants pursued Mr. Thompson, eventually tasing him, which caused him to fall to the ground and sustain injuries to his face and arm. *Id.* at 4-6 (citations omitted). Mr. Thompson alleges that Defendants then "severely and brutally [beat him] with a blunt object [in] the back of [the] head." ECF No. 18-1 at ¶ 12. Defendants deny beating Mr. Thompson.

Following this ordeal, Defendants placed Mr. Thompson in custody. ECF No. 70-1 at 6 (citations omitted). A further search of Mr. Thompson's vehicle revealed multiple firearms, illicit drugs, and other contraband. *Id.* at 7 (citation omitted). Mr. Thompson was indicted for possession of firearms, controlled substances, and other contraband. *See United States v. Thompson* 1:19-cr-40-JJM-PAS, ECF No. 1. Mr.

Thompson pled guilty and was sentenced to a term of incarceration of 96 months. *See id.*, ECF No. 175.

On December 11, 2018, Mr. Thompson, as a pro se litigant, filed a civil lawsuit against Defendants ("*Thompson I*"). *See Thompson v. Hassett*, 1:18-cv-669-JJM-PAS, ECF No. 1. He alleged several Fifth Amendment violations, which this Court construed as Section 1983 Fourth Amendment violations. *See id.*, ECF No. 64. Defendants moved to dismiss the case following Mr. Thompson's Fourth Amended Complaint. *Id.*, ECF No. 65. The Court dismissed Mr. Thompson's complaint. *Id.*, ECF No. 75. Notably, housed in a footnote in the order, the Court denied Mr. Thompson's Motion to Amend/Correct. *Id.* at 2 n.1. Ostensibly dissatisfied with the outcome, Mr. Thompson appealed. *See id.*, ECF No. 77. For reasons unknown, Mr. Thompson later withdrew this appeal. *See id.*, ECF No. 90.

On April 22, 2020, Mr. Thompson filed a new civil suit—the current case before the Court ("*Thompson II*")—against the same Defendants, alleging that they used excessive force during the June 22, 2017 traffic stop. ECF No. 1. After amending this complaint to flesh out his allegations, Defendants moved to dismiss. ECF Nos. 22, 29. The Court granted this motion in part and denied it in part. ECF No. 53. Specifically, the Court dismissed claims against Defendants in their official capacities and any claims against Officer Michael Dugan, who had come on scene to assist Defendants and had moved for judgment on the pleadings. *Id.* at 3-5. But the Court denied the motion as to claims against Defendants in their individual capacities. *Id.* at 5. Defendants now move for summary judgment in *Thompson II*. ECF No. 70.

## II.    STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure controls in deciding whether a party is entitled to summary judgment. Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* More particularly,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). When deciding whether the Court should grant summary judgment, the Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Rsch. Corp.*, 63 F.3d 32, 36 (1st Cir. 1995) (citation omitted). As alluded to, there must first be no genuine issues of material fact. "[M]ere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Thus, the issue must be genuine and material. *See id.* "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party . . . . '[M]aterial' means that the fact is one that might affect the outcome of the suit

under the governing law." *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994) (internal quotation marks omitted) (citations omitted).

Additionally, the moving party must be entitled to judgment as a matter of law. The moving party is "entitled to a judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted) (citations omitted). The Court decides this latter element of the summary judgment standard by evaluating "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson*, 477 U.S. at 252 (alteration in original) (emphasis in original) (internal quotation marks omitted) (citation omitted).

## III. DISCUSSION

Mr. Thompson alleges two claims. ECF No. 18-1 at 6-8. First, Mr. Thompson alleges that Defendants violated Section 1983[2] through their use of excessive force during the June 22, 2017 traffic stop. *Id.* at 6-8. Second, Mr. Thompson seeks a declaration that Defendants violated his constitutional rights. *Id.* at 7. Defendants respond that they are entitled to summary judgment for three reasons. First, Defendants argue that Mr. Thompson's current lawsuit is barred by claim preclusion because of a previous lawsuit that this Court dismissed (*Thompson I*). ECF No. 70-1 at 1. Second, they argue that there is no genuine dispute of material fact. *Id.*

---

[2] While Mr. Thompson styled his complaint as a Bivens action (*see* ECF No. 18-1 at 1), the Court construed it as a Section 1983 action because it seeks redress against state actors. ECF No. 53 at 2.

Alternatively, they argue that their conduct entitles them to qualified immunity. *Id.* Third, they argue that Mr. Thompson failed to properly serve them within the statute of limitations. *Id.* The Court addresses each argument in turn.

### A. Whether Claim Preclusion Bars the Excessive Force Claims in *Thompson II*

The crux of Defendants' argument for summary judgment is that claim preclusion bars the excessive force claims in *Thompson II* because of the final judgment rendered in *Thompson I. See* ECF No. 70-1 at 13-14. "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Manego v. Orleans Bd. of Trade*, 773 F.2d 1, 5 (1st Cir. 1985) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). "This bar is limited, however, to cases arising out of the same cause of action or claim." *Id.* (citation omitted). The United States Court of Appeals for the First Circuit has transcended the traditional approach of determining whether the underlying causes of action are identical, and instead relies on whether the claims are related by a transaction or series of transactions. *Compare Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319 (1927) ("If the [second lawsuit is based] upon the same cause of action, the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit between the same parties . . . ."), *with Airframe Sys. v. Raytheon Co.*, 601 F.3d 9, 15 (1st Cir. 2010) ("This Court uses a transactional approach to determine whether the asserted causes of action are sufficiently identical or related for claim preclusion purposes.").

"Claim preclusion applies if (1) the earlier suit resulted in a final judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related." *Airframe Sys.*, 601 F.3d at 14 (citations omitted). While *Thompson I* resulted in a final judgment, it remains unclear whether the Court issued a final judgment on the excessive force claim. *See Thompson v. Hassett*, 1:18-cv-669-JJM-PAS, ECF No. 75 at 2. Similarly, there is a real question whether "the causes of action asserted in" *Thompson I* and *Thompson II* are "sufficiently identical or closely related." *Airframe Sys.*, 601 F.3d at 14 (citations omitted). The parties are sufficiently identical because Mr. Thompson and Troopers Hassett and Konieczny remain the same parties between *Thompson I* and *Thompson II*. The Court first considers whether the facts in both lawsuits establish that "the claims brought in the prior action are 'closely related' to the instant action." ECF 70-1 at 15. Second, the Court considers whether *Thompson I* resulted in a final judgment on the excessive force claim.

### 1.    Whether the Causes of Action in *Thompson I* and *Thompson II* Arise out of the Same Transaction or Series of Transactions

The First Circuit crafted its own claim preclusion standard that is based on the Restatement. *See, e.g., Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir. 1991); *Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31, 34-37 (1st Cir. 1996). The factual bases undergirding separate causes of action are related by a transaction or series of transactions when "the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether treating them as

a unit conforms to the parties' expectations."[3] *Airframe Sys.*, 601 F.3d at 15 (internal quotation marks omitted) (citation omitted).  This inquiry requires the Court to look at the factual bases of the two lawsuits from a "pragmatic" standpoint, using the specific criteria listed above, and come to a determination "not on whether a second claim could have been brought in a prior suit, but whether the underlying facts of both transactions were the same or substantially similar."  *Manego*, 773 F.2d at 6. The Court first addresses the Restatement's analysis alone and then turns to each factor of the First Circuit's test.

### a.    The Restatement Approach

The Restatement dictates that claims are related by a series of transactions "when a defendant is accused of successive but nearly simultaneous acts, or acts which though occurring over a period of time were substantially of the same sort and similarly motivated."  RESTATEMENT (SECOND) OF JUDGMENTS § 24 (Am L. Inst. May 2023 Update).  Facially, the two cases appear to have related motivations for redress because they both seek damages because of alleged police misconduct that happened on June 22, 2017. *Compare Thompson v. Hassett*, 1:18-cv-669-JJM-PAS, ECF No. 64, *with Thompson v. Hassett*, 1:20-cv-185-JJM-PAS, ECF No. 18-1 at 3-6.  But that view turns on a limited reading of Mr. Thompson's pleadings.  Instead, the wrong for which Mr. Thompson sought redress in *Thompson I* was his incarceration induced by, in Mr. Thompson's view, Defendants' unlawful search and seizure of his vehicle on the side

---

[3] "These factors, however, are merely suggestive; they are not intended to be exhaustive, nor is any one factor determinative."  *Porn*, 93 F.3d at 34 (citations omitted).

of the highway. *See Thompson v. Hassett*, 1:18-cv-669-JJM-PAS, ECF No. 64 ¶ 1 ("This is a[n] Amended Complaint to Redress the Violation of my Classic, Private, Unalienable, absolute, right — liberty that was Deprived under color of State law in violation [of] Amendment [IV] of the Bill of Rights, 18 U.S.C.S. Deprivation of Rights under Color of Law, The Common Law, and the Law of Trespass."). Whereas in *Thompson II*, he is seeking damages for pain and suffering caused by the alleged excessive force. *See* ECF No. 18-1 ¶ 1 ("Plaintiff humbly submits this Amended Complaint . . . to redress Negligent and reckless behavior, Nonfeasance, Malfeasance, Official (Police) Misconduct, Excessive Use of Force, Callous indifference to Plaintiff's establish[ed] Constitutional rights, Deprivation of Rights under Color of Law, and violation of Plaintiff's U.S. Constitutional[ly] protected rights . . . .").

Defendants argue that the two causes of action pertain to the same transaction or series of transactions because they see the entire series of events that unfolded on June 22, 2017 as an inseparable unit. ECF No. 70-1 at 16-17. In other words, Defendants assert that the stop, search, seizure, and subsequent detention comprise "the same incident" as the course of behavior that led up to the alleged use of excessive force. *Id.* at 16 (cleaned up). Defendants thus submit that all of the recounted actions taken on June 22, 2017 constitute a continuous series of transactions, which satisfies the requirements for res judicata. *Id.* at 16-17.

To bolster their argument, Defendants cite an illustration[4] from the Restatement, in which a plaintiff is injured on a passenger train. *See id.* at 17 (citing

---

[4] RESTATEMENT (SECOND) OF JUDGMENTS § 24, illus. 5

RESTATEMENT (SECOND) OF JUDGMENTS § 24, illus. 5). The illustration contemplates a scenario where claim preclusion applies, when two "transactions" occur in chronological succession and spatial proximity to one another. Yet the wording in this hypothetical is ambiguous. The wording may mean that the plaintiff, while climbing aboard the motorcar, fell because of the negligence of the operator, and broke his arm. Then, after he departed the motorcar following his spill, he walked a distance and fell into a negligently left ditch, breaking his leg. This interpretation would mean that Mr. Thompson's case should be precluded.

However, the Court interprets the illustration differently. The wording more seems to suggest that, as the plaintiff fell while boarding the motorcar, and breaking his arm, he fell straight into the ditch, which caused him to break his leg. Essentially, the contemplated event was a perceptively continuous stream of events. This view better aligns with the policy[5] behind claim preclusion because the plaintiff's goal was to seek redress for all the physical harm caused by the negligent operation of the motorcar.[6]

---

       (A brings an action against B Co., a street railway company, alleging that the motorman was negligent in starting the car while A was alighting and that as a result A broke his arm. After a verdict and judgment for A, A brings a new action against B Co. alleging that after alighting from the car he fell into a trench negligently left by B Co. beside the road and broke his leg. The action is precluded.).

[5] *See Kale*, 924 F.2d at 1166 (The purpose of claim preclusion is to prevent the litigation of claims "founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same wrong . . . .").

[6] In *Thompson I*, Mr. Thompson sought redress for what he perceived to be an improper search, seizure, and detention. *See Thompson v. Hassett*, 1:18-cv-669-JJM-PAS, ECF No. 64 ¶ 1. But in *Thompson II*, he seeks redress for physical harm sustained because of an alleged use of excessive force. *See* ECF No. 18-1 ¶ 1.

To recap, the events that the Restatement describes as a continuous transaction are:

1. The plaintiff attempted to climb aboard the defendant's motorcar.

2. The operator pulled away from his stop too quickly, too soon.

3. The plaintiff broke his arm in the fall.

4. He brought an action for that injury and won.

5. The plaintiff then brings a second action seeking redress for his broken leg that happened after he fell from the motorcar into a ditch negligently left by the defendant.

6. The Restatement states that his second lawsuit is barred.

RESTATEMENT (SECOND) OF JUDGMENTS § 24, illus. 5. This scenario is distinguishable from what happened on June 22, 2017. As described by both parties in their briefs:

1. Mr. Thompson was pulled over by Defendants on I-95.

2. While questioning Mr. Thompson, Defendants asked him to step out of the vehicle.

3. Defendants searched Mr. Thompson's vehicle.

4. Upon discovery of a tac-light that could be mounted to a firearm, Defendants attempted to arrest Mr. Thompson.

5. Mr. Thompson fled the arrest by running southbound on the opposite side of the highway.

6. Defendants, concerned about public safety, deployed a taser to impair Mr. Thompson's ability to run.

*See* ECF Nos. 70-1, 98. Of course, the two parties diverge as to what happened after Defendants tased Mr. Thompson. Still, the factual basis for Mr. Thompson's allegations of excessive force did not occur while Defendants searched his vehicle. Rather, these facts occurred afterward and at a significant distance away from his vehicle. The Court thus disagrees with Defendants that "[t]he facts in [Mr. Thompson's] two cases are even more closely related than the Restatement's example of the type of claim that is precluded." ECF No. 70-1 at 17 n.6. Even so, the Restatement's examples do not resolve this case,[7] and the First Circuit has provided more specific criteria. Accordingly, the Court turns to case law for further guidance.

### b.    Whether the Facts are Related in Time and Space

Defendants argue that the factual bases of the two causes of action are spatially and temporally related because their conduct—the traffic stop and the alleged use of excessive force—is linked by "the same incident" and are "successive but nearly simultaneous acts." ECF No. 70-1 at 17 (cleaned up). The Court understands Defendants' argument to mean that, because the two events occurred at relatively the same time and place, they are substantially the same. Their argument

---

[7] The Restatement provides several other examples of what would constitute "successive acts" that are "substantially the same" and "similarly motivated." RESTATEMENT (SECOND) OF JUDGMENTS § 24. These include: a party who continuously trespasses on the land of another over time and a debtor who accrues several overdue payments with a creditor. *See id.* Mr. Thompson's case, however, is not comparable to these examples. Here, the purported "successive acts" are a traffic stop, vehicle search, and an allegation of excessive force on the other side of the highway. Aside from the spatial disparity, searching a vehicle would generally not motivate the searching party to use excessive force. Meaning, an officer should not be driven to use force by searching a vehicle. The use of force would have to be motivated by an intervening act, such as the vehicle's owner physically impeding the search.

would be sounder if perhaps Defendants used Mr. Thompson's body to open the vehicle's compartments, or even if they pulled him out of the car in an overly aggressive manner. But no such facts are present here.

First, the Court views the interactions as two discrete moments in time. The first moment in time—the factual basis for *Thompson I*—consists of what occurred at Mr. Thompson's vehicle between Defendants and him. The second moment in time entails the interaction between Defendants and Mr. Thompson while he was running southbound on the highway. Once Mr. Thompson decided to evade his arrest, the initial temporal moment arguably was shattered, and a new timeline followed. This break in events disrupts the relatedness between the underlying factual bases of the two cases.

Second, the Court views the interactions between Defendants and Mr. Thompson as occurring in significantly different spatial positions. Defendants urge that the factual bases relate spatially because both the facts of the alleged Fourth Amendment violation and the facts of the alleged use of excessive force occurred during the June 22, 2017 "incident." ECF No. 70-1 at 18. Yet that analysis fails to address the question of "sameness" for space. The facts underlying the Fourth Amendment claims in *Thompson I* occurred exclusively by his vehicle. But the excessive force facts occurred farther down the interstate, away from Mr. Thompson's vehicle. Accordingly, the Court finds that these facts did not occur in the same "space."

Consider if Mr. Thompson had been successful in his attempted escape. Instead of the incident occurring along the shoulder of the interstate, the scenario would then take place elsewhere. For example, assume that Mr. Thompson is pulled over on a residential road, and the traffic stop unfolds as it is alleged in *Thompson I*. Once Defendants attempt to arrest Mr. Thompson, he flees. He runs through the neighborhood, evades capture by Defendants, and finds safe harbor in a relative's home. Defendants eventually catch up to Mr. Thompson, they enter the relative's home, and assault Mr. Thompson. While this scenario exaggerates the separation of space, the entire chain of events would still technically be "during the traffic stop." This scenario demonstrates why the space and time factors of claim preclusion cannot be satisfied by merely stating the facts relate because they happened during the "same incident" or event. ECF No. 70-1 at 17 (emphasis omitted) (internal quotation marks omitted). Practically speaking, Mr. Thompson broke the spatial and temporal link between the factual bases when he ran.

Alternatively, if the Court were to accept Defendants' reasoning for why the factual bases are related in time and space—i.e., because the two causes of action arise from the same incident—it would inadvertently limit cases in which conclusively related causes of action would not relate for purposes of claim preclusion just because they did not occur during the same incident. *See, e.g.*, *Airframe Sys.*, 601 F.3d at 11-12 (plaintiff's infringement-by-use claim was precluded despite the alleged acts of the infringement not occurring during the "same incident"). A spatial or temporal link does not have to be precise for relatedness purposes, instead it should

logically make sense. *See Manego*, 773 F.2d at 6 ("There will be situations where the factual bases for separate causes of action are different but intertwined and joining them together is both possible and convenient. A failure to do so, however, will not justify the application of *res judicata*."). Accordingly, the Court finds that the factual bases for both causes of action are not related in space or time.

### c.    Whether the Facts Relate in Origin or Motivation

Whether the facts of *Thompson I* and *Thompson II* relate in origin proves deceptive. A relationship in origin implies that the facts are established from a common point in space and time. The Fourth Amendment claims in *Thompson I* have a factual basis that arise directly from the traffic stop. Whereas the factual basis for the excessive force claims arises from Mr. Thompson's flight from the area where the traffic stop occurred. Optically, the factual bases share a common origin because the facts supporting the excessive force claims would not have resulted but for the facts supporting the Fourth Amendment claims. But a causal relationship is not synonymous with a common origin.

The better approach to determining whether the factual bases for two causes of action relate in origin is to consider whether both bases begin their existence at the same point in time and space, or at least close enough to be considered the same point. Finding that the facts share an origin because they occurred "during the same incident" would require the Court to reasonably assume that usage of excessive force naturally flows from traffic stops that are handled improperly. In fact, it would seem extraordinary if a factual basis for an excessive force claim originated out of a routine

traffic stop. Again, there has to more to establish a Fourth Amendment claim—precipitated by a perceived unlawful search of a vehicle—and an excessive force claim—occurring a significant distance from the vehicle—originated at a common point in space in time other than that they occurred on the highway on the same day.

What motivated the Troopers' conduct that gave rise to the Fourth Amendment cause of action in *Thompson I* cannot have motivated the Troopers' conduct that gave rise to the cause of action in *Thompson II*. Defendants pulled Mr. Thompson over because he swerved over the line into the breakdown lane on the highway. ECF No. 71-2 at ¶¶ 7-8. They then pulled Mr. Thompson out of his vehicle because he lied about his criminal history. *Id.* at ¶ 19. What eventually motivated the search and seizure of his vehicle—the source of Mr. Thompson's Fourth Amendment claims—was the sighting of a tac-light sticking out of a travel bag. *Id.* at ¶¶ 26-30.

The motivation for the alleged use of excessive force was unrelated. What prompted that allegation was Mr. Thompson's flight while Defendants tried to arrest him. *Id.* at ¶¶ 31-40. While a jury must pass on the truth of these factual allegations, Defendants appeared frustrated by having to chase Mr. Thompson down a heavily trafficked interstate highway, opposite to oncoming traffic. Again, it would be peculiar to contend that a traffic stop, gone wrong, requires the use of excessive force. *See Landrigan v. Warwick*, 628 F.2d 736, 741 (1st Cir. 1980) (plaintiff's claim against the Warwick Police Department for covering up evidence was not precluded because "[t]he excessive use of force and the subsequent cover up are separate and distinct wrongs resting on different factual bases"). Perhaps if Mr. Thompson became

16

combative at his vehicle it would be foreseeable Defendants would motivated to apply significantly more force than under ordinary circumstances. Again, no such facts are present here. Accordingly, the Court finds that the factual bases for both causes of action do not share a common origin or motivation.

> ### d.    Whether the Causes of Action Form a Convenient Trial Unit

In determining relatedness between the factual bases, the Court must also consider whether the causes of action "from a convenient trial unit." *Porn*, 93 F.3d at 36. Separate, but related, causes of action form a convenient trial unit when "the witnesses or proof needed in the second action overlap substantially with those used in the first action . . . ." *Id.* at 36 (citation omitted). Aside from the named parties in the two lawsuits, the witnesses or proof needed to try each case are different. *Thompson I* would have been determined largely by the testimony of Defendants and Mr. Thompson—i.e., what happened at Mr. Thompson's car. Yet *Thompson II* would be determined by medical staff, medical documentation, and possible expert medical testimony to prove whether the factual basis gave rise to Mr. Thompson's excessive force claims—how he lost his teeth and broke his arm—exists. Accordingly, the "witness or proof needed" to prove *Thompson II* would not "overlap substantially" with those that would have been used in *Thompson I.*

> ### e.    Whether Litigating the Two Causes of Action as One Trial Unit Conforms to the Parties' Expectations

A party's expectation that two causes of action be tried in the same case complements the time, space, origin, and motivation analyses. *See Porn*, 93 F.3d

at 37 (citation omitted) ("[B]ecause the two claims arose in the same time frame out of similar facts, one would reasonably expect them to be brought together."). A party's expectations are measured from a reasonable person's perspective, rather than what that party would like to see happen. "Defendants may reasonably demand that disposition of the first suit establish repose as to all matters that ordinary people would intuitively count part of a single basic dispute." *Id.* (internal quotation marks omitted) (citing 18 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 4407, at 56 (2d ed. 1981)). An ordinary person would not assume that an alleged unreasonable search and seizure claim and an excessive force claim arose out of a single dispute. The only thing that binds the two claims is that they occurred on the same night and by the same defendants. And the impetus for Mr. Thompson's Fourth Amendment claims was a frustration that his perceived wrongful stop, search, and detention led to a criminal proceeding, and subsequent incarceration. Whereas the excessive force claims against Defendants originated out of alleged law enforcement conduct that was not typical of a traffic stop. An ordinary person would not intuitively view the unlawful search of a vehicle and the use of excessive force as one and the same.

An ordinary person would reasonably expect that a frustrated incarcerated individual—whose incarceration resulted from a perceived abuse of law enforcement authority—would seek redress for being incarcerated by those officials. Similarly, an ordinary person would reasonably expect an individual, who was allegedly beaten by law enforcement, to seek redress for that physical attack. One case seeks redress for

the deprivation of his rights because of his incarceration, the other for actual physical injury from allegedly out of the ordinary behavior by law enforcement.  An ordinary person would not naturally assume that they could be brought together in a single dispute.

Next, if the parties were to negotiate a settlement, it would not make sense for them to negotiate together the two alleged wrongs.  *See Porn*, 93 F.3d at 37 ("[B]ringing related claims together is arguably more conducive to settlement."). State Troopers maintain a duty to the public in ensuring the highways are clear of any potential drunk drivers.[8]  If Mr. Thompson's rights were infringed during a traffic stop, the recourse would depend on how unreasonable the actual search was—i.e., was it improper all together, was it coercive, was Mr. Thompson not aware of his rights?  On the other hand, law enforcement conduct that amounts to excessive force is never in the interest of the public, rather it is an anathema to public safety, trust, and wellbeing.  The recourse stemming from this incident would be greater than that of an improper search and seizure.  From a policy perspective, the Fourth Amendment claims would seek elevation of how law enforcement could conduct safer, more constitutionally secure traffic stops.  The goal of redressing an excessive force violation would be to deter any future motivation for such conduct.

---

[8] Trooper Hassett stated, under oath, that he pulled Mr. Thompson over because he thought he might be drunk.  ECF No. 71-2 at ¶¶ 7-9.

### 2. Whether the Denial of Leave to Amend in *Thompson I* Has Preclusive Effect in *Thompson II*

Finally, Defendants argue that the Court's tacit denial of Mr. Thompson's Motion to Amend precludes the excessive force claim in *Thompson II*. ECF No. 101 at 8. A party is barred from filing a second action "[w]hen [that] party chooses to move for leave to amend its complaint and then not to appeal denial of that motion . . . ." *Hatch v. Trail King Indus.*, 699 F.3d 38, 45 (1st Cir. 2012) (citation omitted). Despite the meandering procedural history of *Thompson I*, Mr. Thompson indeed sought leave to amend, and included his would-be Fifth Amended Complaint. *See Thompson v. Hassett*, 1:18-cv-669-JJM-PAS, ECF Nos. 73, 73-1. In the Fifth Amended Complaint, Mr. Thompson expressly added a Section 1983 excessive force claim against Defendants. *See id.* at 1, 5 ¶ 16 ("Plaintiff was severely beaten by Defendants."). Therefore, Mr. Thompson's current excessive force claims in *Thompson II* would be ostensibly precluded.

However, the case that Defendants cite in support of their position differs significantly from the facts here.[9] And embedded in the *Hatch* decision, is a potentially powerful quote from *Wright & Miller*:

> There is likely to be good reason when the court that has control of the first action concludes that a party should not be allowed to advance matters so closely related to the action as to be part of a single claim. **Unless the court can be persuaded to direct that denial of leave to amend is without prejudice** to advancing the new matter in a separate action, preclusion should apply.

---

[9] Plaintiff in that lawsuit was denied leave to amend when he tried to bring in a state claim directly related to the same issue being litigated—an allegedly faulty custom trailer that led to his injuries. *See Hatch*, 699 F.3d at 40-41.

*Hatch*, 699 F.3d at 45 (emphasis added) (footnotes omitted) (citing 18 CHARLES A. MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE § 4412).  Despite federal law's apprehension in overriding the principles of res judicata, "claim preclusion can be avoided where '[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action.'"  *Kale*, 924 F.2d at 1167 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(b) (1982)).  In *Thompson I*, the Court expressed interest in reserving Mr. Thompson's excessive force claim.

On one hand, the Court stated early on in *Thompson I* that "[t]he Court's going to deny the motion [to dismiss] on excessive force and deny the motion as to qualified immunity without prejudice as premature at this time."  *Thompson v. Hassett*, 1:18-cv-669-JJM-PAS, ECF No. 69 at 48.  On the other hand, the Court denied Mr. Thompson's final Motion to Amend in *Thompson I*, which sought to reintroduce the excessive force claims, because "the proposed amended complaint would not have cured the defects in the complaint noted above."  *Thompson v. Hassett*, 1:18-cv-669-JJM-PAS, ECF No. 75 at 2.  Yet the Court never specifically addressed the Motion to Amend in a stand-alone order.  While the Court dismissed the Fourth Amended Complaint's claims with prejudice in the main body of the order, the Motion to Amend was simply denied in a footnote.  *See id.* at 2 & n.1.

The use of the phrase "with prejudice" invokes a specific legal effect.  Correspondingly, the absence of this phrase in another sentence on the same page of

the order suggests that the judge did not intend this same specific legal effect.[10]
*Compare id.* at 2 ("For all these reasons, the Defendants' Motion to Dismiss is GRANTED with prejudice."), *with id.* at 2 n.1 ("Additionally, the proposed amended complaints would not have cured the defects in the complaint noted above, and therefore the Court DENIES the Motion to Amend."). Significantly, the footnote in the Order on the Motion to Dismiss points out that the additional claims in the Fifth Amended Complaint "would not have cured the defects" as to the alleged Fourth Amendment violations that the Fourth Amended Complaint alleged. *Thompson v. Hassett*, 1:18-cv-669-JJM-PAS, ECF No 75 at 2 n.1. One can infer that, looking at the "transaction" that occurred at Mr. Thompson's vehicle when he was stopped and searched, claims of excessive force during the stop do not relate back because they "assert[] a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). In essence, the Court viewed the claims in the proposed amended complaint as unrelated.

Between the Court's statement in the hearing transcript (*Thompson v. Hassett*, 1:18-cv-669-JJM-PAS, ECF No. 69 at 48) and the nominal denial of Mr. Thompson's Motion to Amend (*Thompson v. Hassett*, 1:18-cv-669-JJM-PAS, ECF

---

[10] *But see Hatch*, 699 F.3d at 43 (dismissing the claims under Mass. Gen. Laws ch. 93A as untimely). What distinguishes *Hatch* from this case is that the plaintiff in *Hatch* sought to add another claim that directly related to the underlying transaction—a faulty custom trailer that injured the plaintiff. Moreover, the proposed amended complaint was submitted more than four months after discovery, and more than eight months after the amended pleadings deadline. *Id.*

No. 75 at 2 n.1) in *Thompson I*, it becomes clear the Court "expressly reserved the plaintiff's right to maintain the second action."  *Kale*, 924 F.2d at 1167 (citation omitted).

## B.    Whether a Genuine Dispute of Material Fact Exists

The Court must determine whether there are material facts in genuine dispute whether Defendants "employed force that was unreasonable under all the circumstances."[11] *Gray v. Cummings*, 917 F.3d 1, 8 (1st Cir. 2019) (citation omitted). The reasonability factor is analyzed through a totality of the circumstances approach, which involves "the weighing of a myriad of factors such as the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [the suspect was] actively resisting arrest or attempting to evade arrest by flight."  *Id.*  (alterations in original) (internal quotation marks omitted) (citation omitted).  At issue here is how Mr. Thompson sustained his injuries after he was tased.

The parties strongly dispute the extent of Mr. Thompson's injuries.  *Compare* ECF No. 70-1 at 6 (citation omitted) ("Specifically, the Troopers observed some blood around Plaintiff's mouth, several missing teeth, and Plaintiff indicated that his arm was hurt."), *with* ECF No. 98 at 3 (citing ECF No. 100) (alleging that, along with the injuries that Defendants describe, Mr. Thompson "lost consciousness" and "had an

---

[11] While a properly pled Section 1983 claim for excessive force would inure under the Fourth Amendment—not the Fourteenth Amendment—Mr. Thompson's constitutional confusion can be excused based on his status as a pro se litigant.  After all, it was the Court that construed his original complaint as a Section 1983 action. *See* ECF No. 53 at 2.

open fracture at the scene"). The parties also strongly dispute how Mr. Thompson sustained those injuries. Defendants assert that Mr. Thompson sustained his injuries "as a result of being tased" after "running at a high rate of speed on a paved highway and then suddenly being propelled to the hard ground as a result of his muscles being incapacitated due to being tased." ECF No. 70-1 at 6 (citation omitted). In contrast, Mr. Thompson alleges that he sustained all his reported injuries from events that occurred after Defendants tased him. ECF No. 98 at 11-13. He contends that Defendants "tackled [him], smashing his face into the pavement causing him to lose teeth," hit him "with a blunt object," "breaking [his] arm," and "struck [him] in the head with the same blunt object." ECF No. 98 at 3. These narratives are vastly different.

Even though the Court must "view the facts in the light most favorable to the non-moving party," Mr. Thompson bears the "burden to produce specific facts, in suitable evidentiary form."[12] *Barbour*, 63 F.3d at 36; *Morris*, 27 F.3d at 748. Mr. Thompson adduced adequate evidentiary support. This evidence includes Mr. Thompson's testimony from a suppression hearing in his criminal case (*see* ECF No. 98-1) and interrogatory responses (*see* ECF No. 97-1). Mr. Thompson's account of the events during sworn testimony and his responses to Defendants'

---

[12] Fed. R. Civ. P. 56 (c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by * * * citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . .").

interrogatories paint a starkly different picture than the one put forth by Defendants. Accordingly, Defendants' argument that no genuine issue of material fact exists must fail.[13]

### C.    Whether Mr. Thompson Effectuated Service Within the Statute of Limitations

Finally, Defendants resurrect their previous argument that Mr. Thompson failed to serve his complaint in a timely manner. ECF No. 70-1 at 31-32. While Defendants point to the first sentence in Rule 4(m) of the Federal Rules of Civil Procedure,[14] the second sentence states that, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Litigating pro se from prison is burdensome enough given the lack of

---

[13] Defendant's qualified immunity argument also turns on the disputed material facts. State actors receive qualified immunity for Section 1983 claims unless "(1) [] the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 226 (2009) (citation omitted). First Circuit law states that—in excessive force cases—pointing to controlling authority is not always necessary when the officer's "conduct was 'such an obvious violation of the Fourth Amendment's general prohibition on unreasonable force that a reasonable officer would not have required prior case law on point to be on notice that his conduct was unlawful.'" *Raiche v. Pietroski*, 623 F.3d 30, 39 (1st Cir. 2010) (citation omitted). Still, Mr. Thompson must also establish that "an objectively reasonable [officer] would have believed that the action taken violated that clearly established constitutional right." *Id.* at 39 (citation omitted). If Mr. Thompson's allegations are true, he maintains a strong argument that tackling and striking with a baton a tased suspect is clearly established as unlawful. But if his account does not hold up, Defendants conduct may not have appeared as clearly unlawful. Accordingly, the Court cannot find qualified immunity at this time.

[14] "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

both resources and experiences one has in this situation.  Defendants also had notice of this lawsuit, even if only in their official capacities.[15]  *See* ECF No. 22-1 at 2. Further the Court already ruled that "[s]ervice of process on the individual state defendants in both their capacities will be effectuated by the Court through its agreement with the state."  Text Order on ECF No. 25 (Oct. 22, 2020).  Accordingly, the Court finds that, not only is there a good cause for granting extension for timely service, but Defendants also had ample notice of the lawsuit.

## IV.  CONCLUSION

Claim preclusion "bars parties from relitigating claims that could have been made in an earlier suit, not just claims that were actually made."  *Airframe Sys.*, 601 F.3d at 14 (citations omitted).  But the bar applies only when "the causes of action arise out of a common nucleus of operative facts."  *Id.* at 15 (citation omitted).  The Court thus finds that the factual bases for *Thompson I* and *Thompson II* are not sufficiently related.  And based on the parties' vastly different recitation of the incident of June 22, 2017, the Court finds genuine and material factual disputes. Further, Mr. Thompson has properly served the Defendants under the Federal Rules

---

[15] Fed. R. Civ. P. 15(c)(1)(C)(i)-(ii)

(An amendment to a pleading relates back to the date of the original pleading when * * * the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment * * * received such notice of the action that it would not be prejudiced in defending on the merits; and * * * knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.).

of Civil Procedure.  For these reasons, the Court DENIES Defendants' Motion for Summary Judgment.  ECF No. 70.


IT IS SO ORDERED.


John J. McConnell, Jr.
Chief Judge
United States District Court


August 4, 2023